1415 Norgren Incorporated v. International Trade Commission and before council begins we will rule on the on the issue of the use of the visual aids. The panel has decided that it will allow the visual aids that are sought to be used to be used. We recognize that the actual visual aid that is going to be used is not an item that was in evidence however we view it as council's attempt to illustrate further arguments made in the briefs. So with that understanding we will allow the visual aid to be used as as council seems appropriate. And I guess Mr. Monthe? It's man thigh. I got it wrong at both ends. Mr. Monthe, right? Man thigh. That's a good illustration. And you've reserved seven minutes for your rebuttal? That's correct. Okay you can start whenever you're ready. Before I start, could I move the easel in some place where everybody can see it? Yes, we won't begin your time until you have your arrangements made. Is that okay where it is? We can see here, yes. Okay, why don't you put up... Good morning. Good morning. This case is about an invented clamp. Although we're here to talk about a generally rectangular ported flange. The flange is only important here because it's something that the clamp attaches to. In the specification and the claims there are basically two functions for this flange that the clamp attaches to. The one is that it contains a port and this is found in column three of the patent. The port goes all the way through this flange and is the method which the compressed air, which is usually what's in these devices, also called fluid, gets from one device to another. Typically there are F's, R's and L's. Filters, regulators and lubricators. We really don't have much time. How about if we jump right to the language in dispute rather than getting a tutorial because we all read the patent, we read the prosecution history, we know how it works. Actually this is one of the few cases where a sample would have been helpful to me, honestly. Something I could have played with and figured out but nonetheless I think I got there on my own. So why don't we jump right to the ITC's conclusion that the flange is only that portion which is received into the clamp and how they construed that in particular not to include the entire what I will describe as shaded L portion noted as 26 and 30 but rather only a subset of that whole portion. That seems to be one of your key arguments and so if you don't mind can we jump right to that? Absolutely your honor. I'd like to refer to this exhibit here which shows figures 3 and 4 and as you can see we've colored in red what has been described as items 26 and 30 in column 3 which are the flanges. And it says that these flanges, items 26 and 30, communicate with the internals of the units, the filters or the regulators and what not. So as you can see the flange is the whole thing that goes out from the bottom which is 24 to the point where there is an interface between the two faces of the flanges. So there is more than is just within the clamp. Now will you take a pen and draw the line where the ITC says it ends or do you have another picture that shows that? Or if you don't want to destroy your beautiful exhibit it's alright with me. As long as you can hear me from here I don't mind destroying the beautiful exhibit. Because I understand the ITC takes the line straight down there, right? So the ITC says the smaller L portion is the flange but not the end that kicks out further towards each side, is that right? And the way they get that is from two parts. One is in the prosecution history where it talks about fitting over and if we can put up the hallman pattern. This really refers to a distinction in the prior art, the hallman pattern. Where the clamp, as you can see, this is the clamp. What figure is that from the? This is figure 3 from the hallman pattern. Figure 3? Right. You can see that, I'll draw a circle around it. Wait, hold on. Are you now focusing, because you're jumping around a bit, are you now focusing on the sentence in which the applicant says that their invention discloses a clamp of rectangular shape wherein one of the sides is pivotably mounted so it can be pivoted out of its operative position in order to fit the clamp over flanges of fluid flow elements. Is that the sentence that you're now going to take us to? That is correct. Now I understood from the prosecution history that this statement was made to overcome or distinguish from, and I'm probably going to pronounce them wrong, but I don't think this is either of them, Edmeyer and Abbes. Am I pronouncing them right as best you can? We've never known how to pronounce A-B-B-E-S. It's either Abbes or Abbes or something like that. All right, but this is not either of them. This is not either of them. If you continue on in that page, on page 5 of the prosecution history in the May entry of 2004, I believe, you'll find out that it talks about hallman, and it talks about the fact that the clamp in hallman is received within. Yeah, but this statement was made to distinguish the references that you were needing to overcome. It may be that you're talking about this later. Are you suggesting that, I guess... What it says in the prosecution history is talking about Abbes and Edmeyer, and it says, but neither of those show a pivotally mounted side. That's how he's distinguishing those two. Because I'll tell you, I looked at Edmeyer and Abbes, and one of the difficulties I had, which you'll probably like, is that in neither of those instances does it seem critical for you to distinguish your claim on the basis that the clamp fits over the flanges. That doesn't seem to be something which would have gotten you out from under Edmeyer and Abbes, but rather it was the rectangular shape, the pivotal mounting that was the critical difference. That's the critical difference. That's what you're telling me, right? That's right, and it continues on in the prosecution history. So you think the ITC gave too much credence to this sentence, or do you think they construed wrongly the language of the sentence? Are you arguing that, yeah, we said this, but we didn't need to say this to overcome this, and therefore it shouldn't be held against us? Or are you saying the ITC entirely misinterpreted the meaning that this sentence should be given? I think they misinterpreted it in two ways. One way is because the language continues on and really is referring to his hallman, because at hallman the clamp is within the structures being joined instead of outside of them. That's the first thing. The second point I would make as far as an error there is that even if you assume that the clamp goes entirely over, if we go back to, yeah, even if the ALJ was right, that the clamp has to be totally within, or the flange has to be totally within the clamp, it does not mean that there have to be four projecting rims. That just doesn't follow. Go ahead. But if you're going to move to the four projecting rims, tell me, explain to me, do you need to win both of these arguments to overcome the non-infringement determination each independently, or if suppose I were to agree with you completely on the rims, but I disagree with you on the flanges and whether it extends beyond. What happens then? Then we win. You win. We win. So if I agree with you on either of these, you win? How is that possible? That's right. It's non-infringement on two different bases. In the accused device, the SMC device, basically it is the exact same flange as described in the patent, except that in their argument there are projections out on two of the sides. On the top and the bottom, the top is flat, the bottom projects out, but it doesn't have a lip. I think Mr. Neustadt is going to show you some actual examples. So that the entire extension that goes out is subsumed within the clamp. But for non-infringement, the ITC held a requirement of four projecting rims. Let's just set that to the side for one more minute. But they also held that the clamp must fit over the flange, and that's why they made that weird cut in the picture saying it's only this much. And they didn't take that out of nowhere. It's the claim language itself that was what drove them to do that. And so are you saying that the infringing device doesn't have flanges that extend beyond the clamp? If the flange is what I say, in other words, it's the red part that's on that exhibit, then theirs is exactly... If I disagree with you about that. If I disagree with you that the flange is the entire red part, but rather agree with the ITC, then I don't even ever need to reach the rim issue, do I? No, no, that's incorrect. Because at that point, it still infringes. Because the only difference between the infringing device and what's described in the patent, if you take the ITC's interpretation, is projections on all four sides rather than on two. The whole thing is contained within the clamp. And why are you all appealing the first prong if it's not necessary for the decision of infringement? Because it seemed to me that there was kind of a leap in logic by the ALJ and the ITC between the completely enclosed within the clamp idea and the four projected rims. I could never get there. And so I was confused about that leap of logic, and so I included both of those. Because I don't think either is correct. But at any rate, unless it has to have four projecting rims, we win. Go ahead. He answered my question. I saw time left. Well, you're into your rebuttal, because you reserved seven minutes for rebuttal, and you have about five left. Why don't I save that for later? Okay, fine. We'll save the remainder of your rebuttal, Mr. Manthei. And we'll hear from, I guess, first the ITC. Mr. Reese? Thank you, Your Honor. I just want to make sure. You've divided up your time. You're taking eight minutes, and Mr. Neustadt has seven minutes. Is that correct? That's correct. Okay. That's correct. Thank you very much. If I may point out, with respect to Hallman, which you're hearing about, the argument about the fit over is actually that related to the construction of the phrase a four-sided, generally rectangular clamp adapted in its operative position, clamping position to engage. Are you referring to the appendix? Do you know what page in there? Yes, that's A34 through 38 is the part of the ID, respect to that. And the only reason I point that out, Your Honor, is that that has never been appealed. That wasn't appealed to. It wasn't a subject of the petition for review before the commission. I'm confused. Hold on for a second. And I say this only because they're clearly appealing the claim construction. The ITC relied on the prosecution history statement as part of its decision-making in construing the claim. So why is that statement and how it should be construed in the context of the particular amendment and response irrelevant to our decision-making? The fit over concept came into play in the ID, I've cited the pages, with respect to the notion of the clamp. The construction of the generally rectangular ported flange itself, that didn't even play a role, the fit over concept. So that claim construction has never even been challenged either to the ITC or in this court, the clamp part. So it's the generally rectangular ported flange. So that's where a great deal of, that's where the focus has really been in this case. That was part of my- Yes, of course. The ITC construed the flange as necessarily fitting entirely within the vertical parameters of the clamp. And so as such, I think that it clearly is part of the analysis the ITC used. I don't see your distinction, but I don't want to waste all your time on it. So can I ask you first? Yes. I'm confused. We have appeal of two claim terms. We have this flange being received into the clamp language on the one hand, and then we have the four rims. Appellant has just asserted that if we were to agree with them on the four rims, then it's irrelevant how we feel about whether or not the flange needs to be entirely within the clamp that they still win. Can you address that? Because normally when we have a non-infringement up here, and there are two different bases that have been found by a lower court, we can't just overturn one of them and the people automatically win. We usually have to overturn them both. And so I'd love to hear you speak to this. I agree, Your Honor. It would require overturning both the concept of how the flange is received into the clamp, and it would require overturning this notion of the projecting rims. I wouldn't so quickly jump over the projecting rims, though, if I may. I know that we haven't talked much about that, but if, Your Honor, we're inclined or considering the appellant's position on that, I would urge you that the administrative law judge got it absolutely correct. Where in the spec, where in the claims, where in the prosecution history does the word rim appear? I'll tell you. It's an excellent question. It's a fundamental question. This isn't even just importing limitations from spec into the claim, because these limitations structurally don't exist anywhere in the history of this patent. Your Honor, respectfully, I must say, I think there's ample support for it. Show me. Where in the spec, where does the word rim appear anywhere? Well, first of all, if I may just start with the claim language, I think that would be even the most fitting place to start, if you will. The claim language is generally a rectangular ported flange. It's not generally rectangular ported stem or feature or member or any of these amorphous concepts that we've heard, and there have been different permutations. Where do you get the notion that a flange must have four rims to be considered a flange? Excellent question. So first you can think about flange. What is a flange? And as Norgren itself argued in this very case when it originally brought the case, a flange is commonly and ordinarily considered projecting rim. That's what flange is. You've got lots of dictionary definitions. A flange is something which has a protrusion on it. Well, a projecting rim is the common and ordinary definition. It's the one to which they even proffered that originally. It's a projecting rim. Okay. Okay, so now you have a projecting rim, and that's the flange concept. Flange is projecting rim. No, a flange includes a projecting rim. It is projecting rim. That's what it is. It's the rim, the rim structure. If that were the case, then you're not getting it. You're not saying that. Well, that's where I'm trying to go step by step, and maybe I'm being too pedantic, but you go from flange to generally rectangular. And it's generally rectangular modifies the word flange. Flange doesn't modify generally rectangular. It's generally rectangular modifies flange. So you're absolutely talking a forciare of a four-sided rim. In other words, a rim that proceeds on the perimeter of a four-sided of a rectangle. That follows naturally. That's the true meaning in that context. You could have a rim on only two sides of the rectangle, couldn't you? A rim on only two sides of the rectangle. Exactly. But that's not a flange. That's not a rectangular flange. That's the whole concept. The flange is that which the clamp in this case grabs onto. And it's that space we can grab behind it. And so if you're going to have rectangular flange, you're necessarily talking about having a rectangle that you can grab onto. That's simply not true, because even under your definition, your ITC definition, it is not simply what you define as rim that you've identified as the flange, and you can't, right? Because the flange is required to be ported. So the flange is necessarily more than just the rim because it must be ported. So you know the flange has to also have that hole in the center of it for the fluid flow. So once you get… You're going to have to be patient. I know you're eager. Once you get to that point, and you've got the port in the center, the flange, why can't there just be two rimmed edges and have that be a rectangular flange? Because the flange is necessarily more than what you're trying to convince me, which is just the rims. It is the port in the center. To have the port, you therefore must have a rectangle around the port. You must. Absolutely, and that's exactly what the AOJ finds. So the claim requires rectangle. The claim requires port. The claim says nothing about how many rims there must be. But that's exactly the point, Your Honor. You're absolutely right that it's got to be ported. And so appellant says, well, how can you have ported and a rim? But that's just the point. With a flange, you can have a ported flange. You don't need… You could have ported in two rims. But that's not a generally rectangular flange. How is it not? How is the rectangular shape with two ridges at a port in the center not considered a rectangular flange? It's absolutely not, not under any… Because the flange is the… Remember, it has to have… It's the four sides that you reach around. Apparently, I'm not doing a good job persuading you, but that's very fundamental. No, and I think… So I would actually go right to the claim language. I would start there. I think there are other provisions in the claim language that help. Which part of the claim language? Is it the word rectangular you think implies four rims? Well, you know, it's not terribly helpful. The patent has all sorts of corrections, and it's on the corrections page, A-157. In fact, this was a product of an amendment. The whole thing was tossed, claims 1 through 8, on indefiniteness grounds, including that the examiner couldn't figure out what was connecting. Okay, but is it a generally rectangular ported flange? Is that the language that you think imports a limitation of four rims or implies or requires a limitation of four rims? Is that the claim language? Yes, that claim language is fully supportive of that. Is there any other language that you would point to? Well, I think the other language in the claim does provide context. Which language would you say brings in a limitation of four rims that must exist on a flange? Your Honor, I think the generally adapted. I mean, they're consistent with that exact notion. And we haven't even gotten to the specification, which I guess appellate counsel. I don't know if I've already hit my time limit, Your Honor. No, if you want to point to the specification, go ahead, Mr. Rees. Either way, I can continue with the claim language, or I can go right to the specification. Well, Your Honor, the adapt, I don't want to leave you hanging. The notion that the claim has to be generally rectangular, it fits over this four-sided, four-rimmed structure that adapted to language. The notion that it's received into, we're all consistent with that idea that it slides in. Wait, received into requires four rims? Received into, that that language in a claim suddenly imports a limitation of four rims? No, but it's consistent with this notion. You've got a four-sided flange. You've got the four-sided rectangle. I just wanted to finish that point. I didn't want to leave there, and I can let appellate counsel start with it. Why don't you show in the spec real quick before you depart where it is, this language, because I really want to understand your best argument. Well, from the specification, that's what's described clearly. I would submit. Show me the four rims. Show me. Show me the language or the picture or whatever you want to point to. This is terribly unfair. This is why I objected. I wasn't trying to be difficult. We understand that's just illustrative. Right, right. But the four rims are, and the expert testimony was crystal clear on this point. This is what the ALJ found. I need my copy. Basically what this is, this is the side view, left to right. Counsel's pointing to figure three. I'm sorry. Yeah, figure three. It's page A151. You're looking at left to right side view, top and bottom. So you're looking at the horizontal of the flange structure. It continues through. It's not just four points. It's continuing this way. And then this one, and maybe this causes some confusion, but in this one, and I even make notes just because. This one is the top view of this. Okay, you're struggling. Is this the concept you want us to appreciate, that this is what a flange looks like? That's exactly it. I'm just trying to help you out. My colleagues are aware of this page as well. But where does the notion of four rims come from in the spec? Four rims. Why should I construe the claim as limited to four rims? You were going to take me to the spec and show me where it makes clear that the claim is limited to four rims. And I just don't have that so far, so I'm going to give you one more chance. Go ahead. All of those references. In fact, it's consistently depicted and described. All those references. I'm sorry. All the embodiments are certainly shown to be exactly as the judge adopted that definition. Rectangular, four-sided, rimmed around all sides with a hole in the middle. That's uniform. You mentioned the amendment that was made to the certificate of correction. Are you referring back to generally rectangular ported? The portal, that first correction that was made? Yes, Your Honor. Yes, Your Honor. Oh, the correction is a correction. It was a, I don't know what, some clerical error. But that language, the generally rectangular, is what was added. That was originally, it wasn't in the preamble. And the patent examiner, and I can pull up the A sites, the patent examiner rejected claims one through eight on the grounds of indefiniteness. In part because he couldn't figure out what exactly was claimed, whether the flange was claimed, how they connected. And among other things, the patentee amended the claim to add generally rectangular ported flange. Put that in, and then described in his- I'm saying it wrong, but those two references didn't show rectangular flanges. They were oddly shaped. Both of them, I looked at them, but they weren't generally rectangular. That's right. Nor do they have that joint, that pivoting. Correct. That's exactly right. I'm sorry, I misunderstood. Mr. Reese, you're, let's see, you've gone about six minutes. No, no, we've had a number of questions from the panel. You've gone six minutes over. So I think we probably ought to hear from Mr. Neustadt. Thank you very much. Neustadt, we'll give you your seven minutes. Thank you, Your Honor. I appreciate that. Your Honor, may I approach, and I'd like to show the bench what generally rectangular ported flange means? Is this an exhibit that was this- Yes. Is this an exhibit before the ITC? Yes, it was. Mr. Manthei, you have no objection to this? I have no objection. The only thing I would ask is, in my rebuttal, if I could use them as well. Oh, yes, certainly. Certainly. I can approach if you find it necessary. It would probably be helpful to leave it with us. Okay, I shall. The claim term that you're referring to, that was the restriction, why there is no infringement, is a generally rectangular ported flange. A generally rectangular ported flange, and this is an ordering device. This is a regulator. The regulator has a flange attached to it. The reason is because they want to attach it to the connector. This is just the way they join them together. This was done with prior art, too. What you do is you put something that's rectangular here. You can choose any shape you want. We showed you, you would pronounce it abs, we'd pronounce it abbies. That had a circular flange. Right. Do you know what a flange is? This one is rectangular. As our expert, Dr. Schumper, says, you can get your fingernail behind it. There's a space here. Because there's a space here. That's the Norgren device? Yes, this is the Norgren device. I'll show you the SMC device. That's an embodiment of the Norgren patent. Right. This is basically what is illustrated in the figures. Okay. The whole purpose is to slide it in, like this. When the claim talks about a generally rectangular ported flange, what they're talking about is a flange that is rectangular, that has a port in the middle. When they say a rectangular flange, what they mean is there's got to be space behind each portion of the rectangle. Then, due to arguments in the court, rather than speaking about sides of a rectangle, they started talking about projections. It's not really a projection. What you're talking about is the side of the rectangle. The limitation of the claim, that you need four projections. Counsel, hold on a second. Does that mean that you need four of the flanges? Or can it just be two? It's got to be rectangular shaped. It can be rectangular shaped and still only have two rims to it, right? No, it's got to have four because here, and that's the drawing that you saw before, it looks like this. There aren't separate projections. It's just one rim in a rectangular shape. Right, but you don't necessarily have to have the bottom of the rectangle, for example, where the top pivots, doesn't necessarily need to have either the groove in the pivotal top or necessarily need to have a flange, a projected rim portion to the flange on that edge. You could just have three. There's no reason mechanically you need that fourth one. It affects a better fit, but the claims don't require it. The claim does require it because the claim says rectangle. You've got to have something that is rectangular shaped. You still have something that's rectangular shaped, and it's still a flange if it has projections, but it doesn't have to have a projection on every side. It will need a projection on every side because otherwise you will end up with something like this. This would not be rectangular because you're missing a side. No, the side would be flush, so it would not have a projection. It would just be flush, so that when the lid came on into it, it came flat. It didn't fit into— I understand that this pivotal closure has a groove, and this particular flange has a rim, such that when even the closure comes down, there is a rim with a groove, and it fits a better seal. It's going to hold it better. It's going to work better because it's got rims on all four sides, so the thing's going to stay in place. When fluid flow goes through, it's not going to wobble or move because it's connected in four places. There's no question that is the preferred embodiment of this invention. It's going to work best that way, but it isn't what they claimed, and that's the part that's— The claim says a generally rectangular ported flange. That means that you need four sides because otherwise it's not rectangular. You have space behind each of these, so therefore you can— Wait. Why do you have space behind each of these? Why does the claim require you to have space behind these? Because that's what a flange is, a rectangular ported flange. What is a flange? Tell me. In layman's language, not with this picture, just what is a flange? A flange you can see in one of the dictionary definitions. You see a railroad wheel. A flange is something that just sticks out. It's a projection. Why can't there be a rectangular flange that just has one projection? The whole thing is generally shaped like a rectangle, and it has a projection. You say, Mr. Neustadt, it's not a flange if it doesn't project. That's right. That's right. That if you have this, and if you were to take this, and if you were to then fill in this space here, then the portion that's a flange is only the U-shaped portion, because now it's no longer a flange because you can't get anything behind it. Can I ask you to explain to me, I'm still confused by Norgren's counsel's suggestion that if we disagree on the four rims limitation, then we reverse because they're going to succeed on infringement. I'm trying to understand, can you explain to me, do they not need to prevail on both the reception into and the four rim limitations in order to get a reversal? I think they need to prevail on both, but that's only because they're not well defined. The case was really tried on a generally rectangular ported flange, and the fit over was an argument that came about not from us trying to insert a limitation into the claim, because we were saying, ours does not have this rectangular. You put that in there. If you didn't have to put it in there, it doesn't matter you put it in there. There is no doctrine of equivalence claimant. It's been thrown out on Festo. Whatever it is, this is what you chose to claim. You chose to claim a generally rectangular ported flange. You needed that rectangle in there, and that means space behind there. The accused device did not have that. The accused device had mounting ears. What about this other thing, this other limitation, whether the flange is received into the clamp, i.e., whether the flange is the entire shaded portion or only a section of the shaded portion on the picture? The flange and the connector are designed together. One fits into the other. The claim was directed to the connector. It talks about a connector adapted to receive a generally rectangular flange. You could say, maybe I'll take something that has a weird size or something, and maybe I'll just put it in there. That isn't what the claim is talking about. The claim is talking about two things that are designed together. Namely, one has this rectangular ported flange, and the connector, which is what the claim says, is adapted to receive the generally rectangular ported flange. That's really the meaning of the claim. This fit-over language that we had in there just came up because people started talking about projections, but there really wasn't any thought at all of describing anything other than this. You see, when it closes this hinge, everything's covered. It was sort of a red herring. I understand one more for clarification. If I were to agree with the ITC that the flange is only the portion of what they have shaded red, which stops where that vertical line is drawn that I asked him to draw in there, will I affirm? Yes. If I understand your question, yes, you would, because this wasn't really a matter of, let's draw this line. Does the non-infringing product, the product of your clients, does it have a flange that extends beyond whatever the parameter of the clamp is? No. Let me show you. Wait. Are you sure you meant no? Does it extend beyond? Well, this is prior art, and it's ours. This is an SMC prior art device. If your flange doesn't extend beyond the parameters of the clamp, then they have proven infringement, or non-infringement can't be based upon that particular limitation. No, because as I say, this talking about projections and fit really only relates to the rectangle. I know, but I understand all that. But the ITC held that the flange is only that portion of the red that's within the parameters of the clamp, and I asked you if your device, which was found not to infringe, has a flange that exceeds the parameters of the clamp, because if it does, then it can't infringe, if I agree with the ITCs. I don't think the ITC was trying to say that. They never applied that definition of projections to the infringing device, because all of these work the same way. You have... So this whole case turns on the rims. It turns on... For terms of infringement, it turns on generally rectangular ported flanges. Got it. Okay. Very helpful. Thank you, Mr. Neustadt. Thank you, Mr. Neustadt. I think you've gone over your time, so we'll hear from Mr. Manthei. Actually, before Mr. Manthei starts, I want to tabulate up the time so you get a fair shake, because I understand... Let's see. Mr. Reese went five minutes over, and Mr. Neustadt went about, I think, about two minutes over. So that means 22 minutes. So we'll give you an extra seven minutes if you need it, Mr. Manthei. Hopefully my math is right and that will even it out. All right. Whatever. I guess as soon as the panel has no more questions, I'm probably done anyway. Mr. Manthei has seven minutes. If I could... Excuse me, Ms. White. Hold on just a second, Ms. Manthei. Thank you, Ms. White. I see the seven now. Yeah. This is just my copy of the same thing he was showing you. This is an SMC unit with their clamp on it, with the accused's clamp on it. Well, no, he was showing us the Norgren device, he said. Right. Well, this is similar. This is one of the exhibits from the hearing. No, but, I mean, so we're clear. Mr. Neustadt showed us two things. He showed us first the Norgren embodiment, and then I believe he showed us an SMC prior art piece, he said. Right. So what is this here? This is a, I believe it's a filter unit. So that's an SMC device, though. This is an SMC device and the accused's clamp on it. Okay. I put the clamp on it, but you can see both sides. This is without the clamp so you can see what their flange looks like. It's basically identical to the one in the patent, and it's got projections on two of the sides. On the top it's somewhat flat, and then it ledges out on the bottom. And then here you can see that their clamp does totally include the part. Where there, Mr. Manthei, where do we see there what you contend are the flanges? I would say that. It's a little hard to see it from here. I think the flange, if we look at figures three and four, is the whole thing that projects out from the body. No, but we're here. We're in that particular embodiment. Well, first, is this part of the record, this item? Well, this is not a rebuttal, Your Honor. If you wanted to, because I won't have a chance to respond to it. Well, we understand the argument. It's been a free-flowing argument on all sides. But is this part of the record, this thing? Yes, it is. It would have been helpful if we could get it. Yeah. And this was not in his notice of visual aids to us either. But you used it. No, I didn't. Oh, you didn't use that? I used the Norgren one. Is that part of the record, though? Is this item part of the record? Is this something that was before the ITC? I don't know if this actual one was. It was. All right, well. I'll accept that representation. It has a marking on it. I don't know how it was used or when. We'll allow it. In good faith. What was the question from the panel? The question from the bench is, where on there are the flanges? Can everyone see this? The way I interpret the pad, which is consistent with figures 3 and 4, and the way they're described in the spec, it's the extension that comes out from the body. And are you telling us this is the accused device? Yes. This is an accused regulator, right, one of the FRLs. It's what extends out from the body. And the clamp goes over these projections. And yet there are only two rims on this one? This has two rims. On the vertical sides. Got it. And then on the top, it's kind of flattened off, but it still projects out from the body. Mr. Neustadt would say we've got two ears, but we don't have four projecting rims. That's the issue. I believe Judge Garza had a question. With respect to the four, if it only has two, then it doesn't infringe. Is that the entire issue? That's the entire issue. So if we decide that it's four, that's required. Then we lose. He is correct. Then you lose. That's right. And my point always is that it doesn't need those. In fact, the functionant doesn't need those, because as described in the patent, it only talks about two, the side that pivots and the one that's opposite. When the pivoting side is tightened in, it has chamfered or beveled edges that grab the responding ones that are on the flange, and it squeezes the two faces together so you have a fluid-type connection. So you don't lose compressed air pressure across the span. So that's basically it. Thank you. Are there any other questions? I don't think so, but are you going to leave all those things with the bailiffs? Yes, Mr. Manda, if you could, and Mr. Neustadt, if you please could deliver to Ms. White all of these various items, both the embodiment and the alleged accused devices. And these? We don't need that. We have that in the appendix material. Okay. But if you could just deliver the items to Ms. White. Thank you. The case is submitted. Thank you.